CANODE v. SEWELL et al. (No. 878.)*

(Court of Civil Appeals of Texas. Amarillo. Dec. 18, 1915.)

1. EVIDENCE ⊙⊶597—SUFFICIENCY.

To support a verdict there must be more than a scintilla of evidence; there must be evidence sufficient to warrant a reasonable belief of the existence of the fact sought to be inferred.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2449; Dec. Dig. ⊙⊶597.]

2. NEGLIGENCE ⊙⊶121 — "RES IPSA LOQUITUR."

The expression "res ipsa loquitur" is a shorthand method of showing that the circumstances attendant upon an occurrence are of such a character as to speak for themselves in inferring the negligence and the cause of the disaster.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. ⊙⊶121.

For other definitions, see Words and Phrases, First and Second Series, Res Ipsa Loquitur.]

3. PLEADING ⊙⊶176 — REPLY AS DENIAL—STATUTE.

Under Rev. St. art. 1829, as amended by Acts 33d Leg. c. 127, providing that if any special matter of defense shall be pleaded by the defendant the plaintiff shall be required to answer to each paragraph, either admitting or denying, or denying that he has any knowledge or information sufficient to form a belief, and that any fact so pleaded by defendant that is not denied by plaintiff shall be taken as confessed, where plaintiffs, to defendant's answer, replied that they had not sufficient information to form a belief, such a reply was tantamount to a denial to the extent of putting defendant upon proof of the fact alleged.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 343, 345–353; Dec. Dig. ⊙⊶176.]

4. MASTER AND SERVANT ⊙⊶278—INJURIES TO SERVANT — NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.

In an action for death of a servant found with his skull crushed on the master's descending elevator, which he had been repairing, evidence held insufficient to establish negligence of the master as the producing cause of the servant's death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ⊙⊶278.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by Carrie Sewell and others against H. P. Canode. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

See, also, 172 S. W. 142.

Cooper & Merrill, of Houston, Lumpkin & Harrington, of Amarillo, and Capps, Cantey, Hanger & Short, of Ft. Worth, for appellant. L. C. Barrett, Jas. N. Browning, E. T. Miller, and J. Marvin Jones, all of Amarillo, for appellees.

HENDRICKS, J. The mother, and the wife and daughter of Alvin Sewell, deceased, sued H. P. Canode, alleging the death of said Sewell to have been produced by the negligence of Canode, on account of a defective elevator, situated in the Amarillo Hotel, at Amarillo, Tex., owned and controlled by said defendant. Upon the trial of the case, after the introduction of plaintiffs' testimony, the defendant refusing to introduce any testimony, the jury, upon the submission of special issues, by the trial court, found that the negligence of the defendant was the cause of Sewell's death, upon which the judgment was rendered; and the sufficiency of the testimony to support this finding, in different phases, is the only assignment of appellant Canode on this appeal.

The testimony of Ong is, in effect, that he was sitting on a settee in the lobby of the Amarillo Hotel, situated on the ground floor of same, facing the hatchway, or shaft, of the elevator, when he heard something fall, "sounding like glass or tools"; and he says that "dust and stuff fell down all around (meaning, we assume, down the shaft of the elevator), and after that "it was not but a second until the elevator came in sight." When the elevator came in sight, he saw one Inman standing inside the elevator, manipulating the lever, used for the purpose of starting and stopping the elevator, back and forth, evidently for the purpose of attempting to stop said elevator. When the elevator descended, and came in sight of Ong, Alvin Sewell was lying on his back upon the top of the cage of the elevator, with his head facing Ong, towards the east, and with his feet over a beam, which we presume was a part of the construction of the top of said elevator cage. The elevator went to the bottom and passed out of sight, the top of said elevator being a little below the lobby floor. Sewell was taken from his position on the top of the cage to the lobby floor, with part

of his skull crushed, apparently dead, and living only a few moments thereafter.

Claude Gaylor, a former employé of Canode, in said hotel, and part of whose duties had been to operate the elevator, testified:

"The elevator was started by a lever working from left to right, and vice versa. The elevator sometimes, when started, would run smoothly, and sometimes it would stop without throwing the lever and start up of its own accord and jerk a little. The elevator sometimes would stop without the current being thrown off and would start up without moving the lever. It behaved as I have described a couple of times, or such matter, in the half of the day that I ran the same, on the Tuesday or Wednesday of the same week prior to the injury complained of. A few weeks prior to the injury, the elevator cage fell from somewhere near the top of the building."

In defendant's answer, in three different paragraphs of the same, there are allegations, one of them in substance that Sewell, prior to the time of his death, had been at work upon the bells of the elevator, placing in same storage batteries for the purpose of operating the floor indicators and the bells connected therewith.

The next averment is, in substance, that the defendant shows to the court that the said Sewell, "just prior" to the time of his injury, which resulted in his death, was working upon the bells of said elevator, situated in said hotel; and the third, in substance, is that Sewell and Inman at and prior to the time the deceased received the injuries, which resulted in his death, had been placing storage batteries for the use of the elevator in connection with its bells and indicator, and that at said time Sewell and Inman were the only persons in and about said elevator.

As to the first allegation, plaintiffs, in a supplemental petition, said they were not informed and had not sufficient information for the purpose of answering the same. The second averment, as to what Sewell was doing just prior to the accident, were specifically denied by plaintiff. The last averment, with reference to the situation and performance of work by Inman and Sewell, was not denied by said plaintiffs.

The appellee would have us, under this condition of the pleadings, to construe the defendant's pleadings, as an admission upon his part of the situation and character of work indulged in by Sewell at or just prior to the time of his injury; and argue that if Sewell was working upon the elevator, in the line of his employment at the time, that fact, in connection with Ong's testimony, and the established fact of the defects of the elevator, constitute sufficient proof of actionable negligence.

If we concede to the extent that appellant's defensive pleadings upon their face, especially the last paragraph mentioned, situates the deceased as placing storage batteries for the use of the elevator, such pleadings would tend to place him in the elevator, "at and prior to. the time" he received his injuries. The testimony of Ong, with the averments insisted upon by appellees, in their brief, as to the work in which the deceased was engaged, placed the batteries, in reality, inside said elevator.

[1] There was a noise of falling glass, or tools, and dust was first seen falling down the elevator shaft, and, within some inappreciable length of time, the elevator hove in sight with Inman desperately attempting to stop it, and Sewell practically dead on top of the cage of the same. We can, of course, infer that the elevator was defective, but the questions remain: What caused the noise as of falling glass, or tools, and the dust and "stuff" that fell down the shaft of the elevator immediately preceding the descent of the same? Or whether Sewell fell through some floor opening into the hatchway, with his tools, and upon the top of the elevator, producing the noise and the débris mentioned, and then Inman started the elevator? As to these questions, we are wholly left to surmise and conjecture. There must be more than a scintilla of evidence; there must be "evidence sufficient to warrant a reasonable belief of the existence of the fact which is sought to be inferred." Washington v. Railway Co., 90 Tex. 321, 38 S. W. 764. In that case cited by appellees, the negro was under some derailed cars, which, it could be inferred upon the principle of res ipsa loquitur, had been negligently derailed, and the appellant, when last seen, was walking in the direction of the place of the accident; it could be inferred that the cars, negligently derailed, fell upon and killed him.

"Adjudicated cases on questions of evidence are valuable as precedents only when based on the same or not dissimilar facts, and such cases are rarely found." Railway Co. v. Boone, 105 Tex. 194, 146 S. W. 533.

Justice Fly properly said, in the same case (131 S. W. 619), that cases of this character "are decided upon their own proper facts, and not upon those of another and different case," and we look to other cases only "to assist us in the proper understanding of the facts and the probative force that should be accorded them."

In the Boone Case, supra, insisted upon by appellees as applicable to this record, when you read Justice Fly's opinion, upon which the writ of error was granted (which more fully sets out the facts and derivable inferences than Justice Dibrell's opinion) in connection with the opinion of the Supreme Court, there is exhibited a train of facts, and circumstantial inferences, though tenuous, which justified the verdict that the engineer, without warning, in the night, negligently shoved a "cut" of cars onto the "cut" upon which Boone was working moving down the track, and which knocked him off the particular car where he was last seen in the line of his duty for the purpose of setting the brakes.

In the case of Thompson v. Johnson Bros., 86 Wis. 576, 57 N. W. 298, the boy got upon a freight elevator and was jerked into an unguarded drum, which rolled and unrolled a cable according to whether the elevator was ascending, or descending; it was certain, of course, that the elevator killed him, and quite inferable that the cable jerked him onto, or into, the unguarded drum. The elevator should really have been started by "check lines," instead of by the cable, and the jury found· that the boy, by mistake, when he stepped upon and started the elevator, must have caught hold of the cable instead of the "check lines," and that his youth and inexperience excused his act.

[2] Appellees say that the principle, res ipsa loquitur applies. This doctrine, appropriate when applicable, is a shorthand method of saying that the circumstances attendant upon an occurrence are of such a character as to speak for themselves in inferring the negligence and the cause of the disaster. If from this record we knew, or there was some pertinent fact to induce a reasonable belief, that the starting of the elevator killed Sewell, or that the elevator started when he was working on top of the same, or that this noise, which Ong heard, producing the dust that fell down the hatchway, was in some manner caused by Sewell's body being jerked over when the elevator started, or was jerked against some obstruction, initially produced by the starting of the elevator, a different cause would be presented. To have Sewell placing the storage batteries in the elevator (which is the defendant's pleading reproduced in appellees' brief, as an admission of Sewell's situation) when the testimony places Sewell in a dying condition upon the top of the elevator cage, without some pertinent fact explaining such a thing, does not aid us.

If we consider the defendant's sixth paragraph of his pleading, as to the situation of Sewell and Inman, in placing the storage batteries for the use of the elevator upon the same, when the first pleading of defendant and plaintiffs' evidence place the batteries inside the elevator, make it equally inexplicable and hard to give the same the effect desired. If we say that this last pleading is not clear and that the pleader really meant that Sewell was placing batteries when he was killed, or some of same, outside of, or on top of, the elevator, this situation is contradicted by that·part of defendant's pleading, reproduced in appellees' brief, in situating Sewell as at "work upon the bells of the elevator, placing therein storage batteries for the purpose of operating" the indicators and bells; for in this last paragraph the pleader evidently means, though not grammatically stated, that Sewell was placing storage batteries within the cage of said elevator.

If we should begin to speculate and place the elevator at a floor opening, and Sewell as standing just outside and reaching in, placing the storage batteries therein, and say that the lever of the elevator was in some manner started, producing the descent, and that Sewell fell from said opening in some manner on top of the elevator, as it was descending, creating the noise, and the dust, the question would then remain: Who started the elevator, Inman or Sewell? The situation of the openings upstairs as to the lever within the cage of the elevator is not shown, nor that of the batteries, except that they were inside the elevator. We seriously doubt that· because Inman, when the elevator was descending, was making a desperate effort to stop its descent, in such a situation hypothetically reproduced, we could say that he started it.

[3] We are unable to decide unless we bridge a hiatus by assumption, and say simply, because it is generally shown that deceased was an employé of the defendant, that he was on top of the elevator in the performance of his work when it started, and that by the negligence of Inman he was injured, or from some defect of the elevator. All the evidence assembled by appellee as to his duties, and what he had previously done, does not help us. As to the answer of defendant wherein he first alleged the situation of Sewell as having been engaged in placing storage batteries and as to which plaintiffs replied they had not sufficient information to form a belief, we construe article 1829 as amended by the Acts of the 33d Legislature, c. 127, to make such a reply as tantamount to a denial, to the extent of putting defendant upon proof of the fact alleged; this is the pleading which appellees say in their brief the situation of the deceased is admitted. This, and the other pleadings, place him within the elevator by strong implication, if not expressly at the very time. Carefully considering the pleadings and if permitted to treat them as admissions, we are not helped. Gaylor did say that on one occasion the elevator dropped from the top to the bottom. We understand that to have been a different manifestation than at the particular time inquired about. The self-starting of the elevator, as we deduce it from Gaylor's testimony, reproduced in the preliminary part of this opinion, was at a time when the elevator was ascending or descending, and after running smoothly would sometimes stop without throwing the lever and then start up of its own accord, and "jerk a little." We do not understand from this testimony that the elevator had ever automatically started itself, when the current was off, from a dead rest.

[4] Careful and repeated examination of this testimony, with the inferences (or, rather, the lack of inferences) derivable therefrom, has forced us to the conclusion that · the evidence offered was not legally sufficient

to establish negligence as producing the death of Sewell; that in order to do so we have to surmise, which is different from an exhibition of facts establishing a reasonable belief that negligence as an actuating cause has been proved. Deplorable as the occurrence is shown to have been, we feel compelled to remand the cause.

Reversed and remanded.

