MARSENE JOHNSON V. S. S. HANSCOM, COUNTY JUDGE.

Decided January 25, 1897.

**1. Supreme Court—Jurisdiction.**

The County Court has power, under amended sec. 16, art. 5 of the Constitution, to grant mandamus requiring a county judge to issue warrants for fees earned by a justice of the peace and collected by the county, amounting to more than $200 and less than $1000; and,—the judge of said court being defendant in the suit,—a special judge may be appointed to try the cause. Hence the jurisdiction of the Court of Appeals is final in an appeal, in such case commenced in the District Court. (Pp. 322, 323.)

ON RE-HEARING.

**2. Same—Charter Construed.**

Section 17 of the charter of the City of Galveston construed, and held that in providing therein that the City Recorder should be, ex-officio, a justice of the peace, it was not intended to blend two distinct functions in one office, but that the powers and duties of the recorder, as such, were distinct from his powers and duties as justice of the peace,—in which latter capacity he acted as a State officer; that the provision in said charter fixing his compensation related only to services as recorder; and that providing for payment of fines collected into the city treasury, referred only to fines imposed as recorder, and not to those imposed as justice. (Pp. 324 to 328.)

**3. Same—Validity of Statute.**

Such being the construction claimed by plaintiff in error, and upon which his case depended, and the charter, as so construed, not being violative of the Constitution, the fact that a different construction was given to it by the Court of Civil Appeals did not, though the charter, as so construed, might be held unconstitutional, present a question involving the validity of a statute, which would give the Supreme Court jurisdiction over a case that might be commenced in the County Court. (Pp. 324, 328.)

4. Same—Revenue Law.

Neither did such case come within the exception of suits involving the revenue laws of the State. Such exception embraces only laws primarily intended to produce the revenue from which the government is to be supported. (Pp. 328, 329.)

5. Statutory Construction—Constitutionality.

Of two constructions, that which would render an act of the Legislature valid will be adopted in preference to one under which it would be violative of the Constitution. (P. 327.)

6. Same—Former Construction.

Language which, in a former law, has been construed by the courts, will be deemed, where re-enacted by the Legislature, to have been intended to bear the same construction. (P. 328.)

ERROR to Court of Civil Appeals, First District, on writ of error from Galveston County.

The suit was brought by Johnson, and the trial court rendered judgment for the defendant. Plaintiff thereupon brought it, by writ of error, before the Court of Civil Appeals, where the judgment was affirmed. His application for writ of error to the Supreme Court was first dismissed—afterwards, on motion for rehearing, granted.

*Byron Johnson,* for petitioner.

*Gresham, Jones* and *Wheless,* for defendant in error.

GAINES, CHIEF JUSTICE.—The nature of this suit is stated as follows by the Court of Civil Appeals:

"This was a proceeding instituted by the relator, Marsene Johnson, in the District Court of Galveston County, Texas, February 17, 1894, against S. S. Hanscom, as judge of the County Court of Galveston County, to compel him to execute and deliver, as such officer, to the relator, a warrant in favor of the latter upon the treasurer of said county for the sum of $203.40, alleged to be due and owing him by Galveston County for costs and fees earned by the relator and collected by said county in certain enumerated cases heard and determined before him as recorder of the city of Galveston and as ex-officio justice of the peace, wherein the accused were charged with and convicted of violations of the penal laws of the State of Texas."

Under amended section 16 of article 5 of the Constitution, this proceeding might properly have been instituted in the County Court. Before the amendment the District Court only had power to issue the writ of mandamus, except when it was necessary to enforce the jurisdiction of some other court. But we are of the opinion, that by virtue of the amendment the County Court has power to issue the writ in any case where a mere monied demand is involved, and the amount of that demand exceeds $200 and does not exceed $1000, exclusive of interest. Our reasons for the conclusion are given in the opinion on the motion for a rehearing in the case of Dean v. The State, 88 Texas, 296.

The judgment of a Court of Civil Appeals is final in every case, as a general rule, "when under the Constitution a County Court would have original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the State or the validity of a statute." (Rev. Stats., 1895, article 996.)  This application does not show that this case comes within either exception.

Smith v. The City of Sherman, which was dismissed at the last term of the court, involved the same question, and we held, that we had no power to grant a writ of error in that case, but without a written opinion.

We have had some difficulty in determining the question of jurisdiction in this case, by reason of the fact that the county judge was the defendant in the suit.  But our conclusion is, that although the county judge be a party to the suit, it may be brought in the County Court and a special judge agreed upon or appointed to try the case.  See last clause of sec. 16, art. 5, of the Constitution.

The application is dismissed for want of jurisdiction.

*Byron Johnson,* for plaintiff in error, in an argument in support of motion for rehearing, as to his powers and jurisdiction as ex-officio justice of the peace, cited:  Code Crim Proced., arts. 41, 98, 99, 924, 930, 931, 935, 1010 to 1014, 1128; Charter of City of Galveston, art. 7, sec. 17.

On the duty of the county judge to issue and deliver him a warrant on the county treasurer for his costs in State cases:  Sayles' Civ. Stats., 3600, 3609, 3586; City Ordinances, arts. 378, 379, 380.

That the provision in the charter of the city of Galveston requiring all fines, etc., to be paid into the city treasury was not intended to apply to State cases, but to city cases for violations of city ordinances alone, and that the disposition of fines collected in State cases is governed by the statute of the State:  Code Crim. Proced., art. 1015.

That if the provision in the city charter had been intended to apply to moneys collected as fines in State cases, it would be a legislative appropriation to the City of Galveston, the same being a municipal corporation, of public moneys belonging to the State and county, which would be in violation of the State Constitution.  (Const. of Texas, art. 3, secs. 51, 56.)  And the ruling of the Court of Civil Appeals involved a question of the validity and constitutionality of statutes of the State, which gave the Supreme Court jurisdiction.

That the case was not one which could have been brought in the County Court:  Const., art. 5, secs. 11, 16; Rev. Stats., arts. 1129, 1130; Taylor v. Williams, 26 Texas, 583; Glavecke v. Tijirina, 24 Texas, 669; Dicks v. Austin College, 1 White & W. App. C.; McFaddin v. Preston, 54 Texas, 406; Davis v. State, 44 Texas, 524; Railway v. Ryan, 44 Texas, 426; Peters v. Duke, 1 White & W., App. C., 304; Rogan v. Grady, 2 Willson, App. C., 260; Clack v. Taylor Co., 3 Willson, App. C., 201; Keuchler v. Wright, 40 Texas, 680; Walker v. Bernard, 27 S. W. Rep., 726; Black's Law Dic., 748; Virginia v. Rives, 100 U. S., 323; 3 Black. Com., 110; 1 Cranch, 169; 5 Peters, 192; 12 Peters, 614; Peo-

ple v. Jameson, 40 Ill., 93; Ex parte Sibert, 67 Ala., 349; Jack v. Moore, 66 Ala., 184; Merrill on Mandamus, secs. 38, 203, 302; People v. Barnett, 91 Ill., 422.

*Gresham, Jones* and *Wheless,* for defendant in error.

GAINES, CHIEF JUSTICE.—On a former day of this term we held, in a written opinion, that this case might have been brought in the County Court, and that therefore the decision of the Court of Civil Appeals was final and no writ of error lay thereto. This is the general rule, to which, however, there are some exceptions. Rev. Stats., 1895, art. 996. The question of jurisdiction was not alluded to in the petition for a writ of error, and therefore we disposed of the application under the general rule, without having our attention directed to the fact that the case might possibly come under one of the exceptions laid down in the statute. A motion for a rehearing was filed, in which it was insisted, that the court was in error in not taking jurisdiction of the application, for the reason that both the validity of a statute and the revenue laws of the State were involved in the determination of the case. We found that, in the opinion of the Court of Civil Appeals, the question of the constitutionality of that provision of the special charter of the city of Galveston, under which it was claimed that the plaintiff in error was not entitled to recover, was discussed; and therefore concluded that the case came within one of the excepted classes. We therefore granted the motion for a rehearing, and being of opinion that there was error in the ruling of the Court of Civil Appeals upon the main question, we granted the writ.

Doubts having arisen in our minds as to the correctness of our ruling upon the jurisdictional questions, we suggested them upon the hearing and have had the benefit of argument upon the difficulties so presented, from the standpoint of the plaintiff in error.

Having now to the best of our ability maturely considered these questions, we are of the opinion that our first ruling was correct and that we are without jurisdiction to hear and determine the case. We have not at any time been inclined to recede from our opinion as formerly expressed, that this action might have been brought in the County Court, and we now think that it involves neither the validity of a statute nor the revenue laws of the State.

1. If the construction of the 17th section of the charter of the city of Galveston, claimed by the defendant in error and adopted by the Court of Civil Appeals, be correct, there is a question as to its constitutionality. But is that construction correct? The section in question reads as follows:

"The recorder of said city shall be the chief judicial magistrate thereof, and as such shall hold a court within said city, by the name of the 'Recorder's Court of the City of Galveston,' which said court shall have jurisdiction and cognizance of all misdemeanors, breaches of the peace,

infractions of the ordinances, and all other causes arising under the laws of said city, and shall be deemed always open for the trial of such cases. The said court shall have full power, authority and jurisdiction in all cases arising under the ordinances of said corporation, and over any breaches and violations thereof, and of any and all persons thus offending, and to try and determine all suits and actions and complaints charging a violation of any ordinance of said city; and may grant new trials on motion, in writing, showing sufficient cause and duly sworn to. The recorder may require of any person arrested under the provisions of this act, a bond for his or her good behavior, and to keep the peace, with two good and sufficient sureties; which bond shall be payable to the city of Galveston. He shall have full power and authority to issue subpoenas for witnesses, and to compel their attendance by process of attachment. He may punish all contempts by fine and imprisonment, or either; may issue subpoenas, writs of capias, warrants of arrest, search warrants, executions, and all other process known to the law which a justice of the peace of this State may lawfully issue; and all of said writs and process shall be issued, served and executed under the same form and in the same manner as the like process would be when issued by a justice of the peace, unless herein otherwise provided. He shall have full power and authority to administer official oaths, and all other oaths and affirmations, and give certificates thereof. The recorder shall be ex-officio justice of the peace, and he shall possess and execute, in criminal cases, all the powers and duties of such officer, and shall have the same authority and like powers with justices of the peace in the prevention and suppression of crime; provided, that in no case shall he entertain jurisdiction in civil cases. The city council may determine what costs shall be charged in proceedings in and for all process issued in said court, and shall allow the judge thereof, for his services, a salary, payable at stated periods, eighteen hundred dollars per annum; and the recorder shall perform such other duties as may be prescribed by any ordinance of said corporation, that may properly and lawfully be required of said officer, as the judge of said court, and are not inconsistent with the laws and Constitution of this State; provided, that all moneys collected from fines, of whatever character, imposed by the recorder, shall be paid into the city treasury for the use of the city. The proceedings before said court shall be commenced by filing a complaint, specifying the charges made against the accused with reasonable certainty, which complaint shall be sworn to and shall not be quashed for any formal defects, if it substantially sets forth the nature of the alleged violation. All process of said court shall run in the name of the city of Galveston. The city council may, if they deem it necessary, provide said court with one or more clerks and a seal; and such clerk or clerks, when appointed and qualified under any ordinance in that behalf, shall have full power and authority, the same as the recorder, to administer all oaths and affirmations, and to give certificates thereof, and may issue subpoenas, writs of capias, executions, warrants of arrest and search warrants. Such clerks shall have the custody of all books and papers be-

longing to said court, and shall make out all process and writs, enter upon a docket all complaints before said court, and the recorder's judgment and sentence therein; and he shall receive for his services such salary as the city council may determine, not to exceed twelve hundred dollars per annum."

The plaintiff in error was the recorder of the city and by virtue of this section exercised the powers of a justice of the peace within the territorial limits of his jurisdiction in enforcing the criminal laws of the State; and he claims in this case that while so acting he was entitled to the same fees as any other justice of the peace, without reference to the law which fixed his salary as City Recorder. On the other hand, it is insisted, that it was the intention of the law to give the fines collected and fees earned by him as justice of the peace to the city, and that the salary prescribed was to be a full compensation for his services both as justice of the peace and as recorder proper. We think that the ground assumed by the plaintiff in error is well taken. In our opinion, the difficulty of construction grows solely out of the arrangement of the clauses in the section. The section quoted is devoted exclusively to the establishment of the "Recorder's Court" of the city and to the powers, duties and emoluments of the recorder. Let us analyze its provisions. It first provides that the recorder shall be the chief judicial magistrate of the city and that he shall hold a court by the name of "Recorder's Court of the City of Galveston" and defines the powers and jurisdiction of that court. Its jurisdiction is confined to criminal causes arising under the laws of the city, that is, to prosecutions for the violations of the municipal laws. Next in order the section proceeds to define the powers of the recorder simply, and then immediately in the same connection prescribes that he shall ex-officio act as a justice of the peace within the city, except as to civil cases. Then come the provisions as to the costs of the court and the salary of the officer and the disposition of the fines that may be collected. It is apparent, we think, that if the provisions which make the recorder ex-officio a justice of the peace had been inserted at the end of the section, instead of being placed in juxtaposition with the clauses which defined his powers merely as recorder, all difficulty of construction would have been removed. It would have been clear that all other provisions, save that, applied only to the Recorder's Court, and to the recorder as "the chief judicial magistrate" of the city. But when the language of the section is critically examined, we think that it appears that it was not the purpose of the law to make the clauses of the section which follow that which prescribes that the recorder shall be ex-officio a justice of the peace, applicable to him in that capacity; and that the framers of the bill inserted the provision in that place, merely because they considered that it would appropriately appear in connection with the other provisions which defined the powers of the officer. The act mentioned by name but one court, the "Recorder's Court of the City of Galveston." In making the recorder a justice of the peace and prescribing that he should exercise the powers and duties of that office, except in civil cases, it is necessarily implied that he should hold a justice's

court for the trial of offenses against the State over which such courts have jurisdiction. But in that clause the word "court" is not employed. Hence, when in the next sentence it is said: "The city council may determine what costs shall be charged in proceedings in, and for all process issued in said court, and shall allow the judge thereof, for his services, a salary, payable at stated periods, eighteen hundred dollars per annum," it is evident that the only court mentioned, to-wit, the "Recorder's Court of the City of Galveston," is the court to which reference is made. We think it equally clear that when it is said in the same sentence that the city council "shall allow the judge thereof, for his services, a salary, payable at stated periods, (of) eighteen hundred dollars per annum," it is meant that the salary was to be allowed for his services as judge of that court, and that his fees as justice of the peace were not to be taken into account. And we are of opinion also, that by the language "all moneys collected from fines, of whatever character, imposed by the recorder, shall be paid into the treasury for the use of the city," is meant all fines imposed by him in his capacity of recorder or "chief judicial magistrate" of the city, and that fines imposed by him as justice of the peace in enforcement of the State statute, were not intended to be included. If we should hold that this sentence was intended to prescribe his duties as justice of the peace, we would be constrained to hold also, that the subsequent provision which prescribes that "all process shall run in the name of the City of Galveston," applied also to process issued by the officer as a justice of the peace. But section 12 of article 5 of our Constitution reads as follows: "All judges of courts of this State (shall), by virtue of their office, be conservators of the peace throughout the State. The style of all writs and process shall be, 'The State of Texas.' All prosecutions shall be carried on in the name and by authority of the State of Texas, and shall conclude 'against the peace and dignity of the State.' " This evidently refers to writs and other process from State courts. While acting as justice of the peace, the recorder of the city is, to all intents and purposes, a justice of the peace, and since the criminal jurisdiction of a justice's court extends only to prosecutions for violations of certain penal laws of the State, he is, as to the functions of that office, a State officer. Writs and process issued by him are State writs and State process, and hence they must run in the name of the State of Texas. We cannot impute to the Legislature a purpose to violate so plain a mandate of the fundamental law, and hence must hold that their intention was that the provision in question should apply only to the process of the court of which he is the judge. Again, we are of opinion that it was not the purpose to provide a clerk for a justice of the peace, with power to administer oaths and issue process. The contention that the provisions under consideration were intended to apply to the recorder when acting as justice of the peace, cannot be maintained, except upon the theory that it was the purpose to blend the jurisdiction of a justice of the peace, under the State laws, with that of the recorder over cases arising under the city ordinances, and to organize one court under the municipal government to en-

force not only the municipal ordinances, but also such State laws as could be enforced by a justice of the peace. We need not enquire whether or not such legislation is permitted under the Constitution. The provisions of the section in question show that such was not the legislative intent. The powers and jurisdiction of the Recorder's Court are defined, but it is nowhere said that that court shall have power to hear and determine State cases over which the justice's court has jurisdiction. It is merely provided that in addition to the duties of the recorder as the chief judicial magistrate of the city, he shall be ex-officio justice of the peace, with the powers and duties of that officer as to offenses against the State laws, evidently meaning we think, that he should act under the general laws of the State, and should be entitled to the same emoluments as any other justice under such laws. It is one thing to blend two distinct functions in one office, and another to prescribe that a person who shall hold one office shall by virtue of that office exercise the functions of another. (Attorney General v. Laughton, 9 Am. & Eng. Corp. Cas. 79; Bouanchaud v. D'Hebert, 21 La. Ann., 138; People v. Edwards, 9 Cal., 286; Lathrop v. Brittain, 30 Cal., 680). Under the section in question the powers and duties of the recorder, simply as such, were just as distinct from his powers and duties when acting as justice of the peace as if such powers and duties had been exercised by two different persons.

Our former Court of Appeals placed the same construction upon precisely similar provisions, couched, in the main, in the same language, in our Revised Statutes for the incorporation of cities under the general law. The City of Hempstead v. Waller County, 1 White & W. App. C., sec. 799. That court was a court of last resort in cases over which it had jurisdiction, and the case was decided in 1881. In 1891 the act in question was passed, and section 17 was adopted from the general law, with some modifications not affecting the point before us. It is to be presumed that the Legislature knew of the construction that had been placed upon the text, and that if they were not satisfied with it they would have so changed the verbiage as to have shown clearly a contrary intention.

Such being, in our opinion, the proper construction of the Statute, we do not understand that any question is raised as to its validity. The very ground of the contention of the plaintiff in error is that such is the construction and that it is a valid law. If not, he has no standing in court. Without giving the provision in question a false construction, no question as to the constitutionality is raised. Therefore we think that we cannot entertain jurisdiction of this case, upon the ground that the validity of a statute is involved.

Nor in our opinion does the case involve the revenue laws of the State. In a general sense the terms "the revenue laws of the State" may embrace all laws, the operation of which bring an income to the State or to its counties, however trivial may be the sum yielded. But we think the purpose of the exception in article 996 of the Revised Statutes, which allows a writ of error to this court from the decision of the Court of Civil Appeals in case the revenue laws of the State are involved, when under

the general rule such writ would not be permitted, was to give this court power in all such cases to construe the laws which were primarily intended to produce the revenues from which the government is to be supported. In construing the meaning of the words in question, in United States v. Norton (91 U. S., 566), the court quote with approval the definition of Judge Story, who, in United States v. Mayo (1 Gall., 396), says, that revenue laws are such "as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government." A similar ruling was made in United States v. Hill (123 U. S., 681), where, as in this case, the construction of the language became necessary in order to determine a question as to the jurisdiction of the court.

For the reasons given, the writ of error is dismissed for the want of jurisdiction.

*Writ of error dismissed.*