### HARRIS COUNTY v. HALL et al.

### No. 11419.

Court of Civil Appeals of Texas. Galveston.

Oct. 8, 1942.

Rehearing Denied Nov. 24, 1942.

Dan W. Jackson, Dist. Atty., Conrad J. Landrum, Asst. Dist. Atty., Lewis & Knipp, and Ernest A. Knipp, all of Houston, Texas, for appellant.

Edd R. Campbell and Sam R. Merrill, both of Houston, for appellee J. W. Hall.

Baker, Botts, Andrews & Wharton and Albert P. Jones, all of Houston, for appellee Hartford Accident & Indemnity Co.

GRAVES, Justice.

This appeal by the County of Harris, as appellant, against J. W. Hall, its ex-tax assessor and collector, and Hartford Accident and Indemnity Company—the surety on his official bond in that capacity—as appellees, is from a judgment of the 55th District Court of Harris County, sitting without a jury, in a cause wherein appellant sought to enforce an accounting against Hall and to recover certain fees and other money—totalling $58,510.15—which it alleged he had collected and received officially while holding such office as fees thereof prescribed by law, but which he had neither reported nor paid over to it, but had instead retained and converted to his own use; following a full hearing upon the facts, the court denied all other sued-for claims, but, after Hall had voluntarily acknowledged liability therefor (basing it upon R. S. Article 7324, Vernon's Ann.Civ.St. art. 7324, as in effect at that time, and Crosby County Cattle Co. v. McDermett, Tex. Civ.App., 281 S.W. 293) awarded appellant a $412.71 recovery against both appellees as for $316.81 (together with accrued interest thereon), found to have been officially collected by him during the years 1935, 1936, and 1937, and not accounted for to the appellant "for the furnishing of tax statements which should, under the then-governing statute, have been furnished free of cost."

The court supported its decree by numerous findings of facts, which appear both in and supplementary to the decree itself.

In this court the county challenges its correctness, in so far as such determination below was adverse to it, contending that it should have had a like recovery for the two other classes of its claims, aggregating the balance of the total so sued for, or at least $22,020.45 thereof, upon its insistence that they all so constituted fees of office, for which the appellee Hall and his surety should likewise be held liable to the county.

Since both parties are thus satisfied with the $412.71 recovery, and since the trial court, on what this court deems to

have been sufficient testimony, fully acquitted the appellee Hall and all of his deputies not only of any wrongful conduct whatever as to the collection or retention of any of the amounts sued for, but also of having caused the county any monetary loss as incident thereto, this court is bound by that determination.

In the resulting state of the record, it is held that the county's contentions here present, at most, purely matters of law: that is, the questions on appeal are reduced to simple inquiries as to whether or not any of the other items so claimed, in law, constituted fees of office, for which the appellee, as such assessor and collector of taxes during the time they were collected, was liable to account to the county.

Following a review of the extended record, including the statement of facts and exhibits thereto, this court is constrained to agree with the court below that none of such items did constitute such fees of office.

The other classes of claims—as distinguished from those aggregating $316.80 for the mere furnishing to Harris County property owners of tax certificates as to the condition of their current or delinquent taxes, or both, which total the trial court held to have been fees of office for services that should have been furnished the citizens free of cost—were:

(1) For other, different, and special tax statements, as alleged in appellant's first amended original petition.

(2) For fees collected from citizens by the appellee Hall and his deputies, in the form of notary fees to such deputies for their taking of acknowledgments of automobile owners to bills of sale to their cars, and affidavits connected with the registering of all motor vehicles and the issuing of original and duplicate license receipts thereon, and the re-registering of such motor vehicles, from 1935 to 1937, both inclusive, aggregating $9,986.25.

(3) $11,510.30 expended by Roy M. Fullerton from an account in his name in the First National Bank of Houston, allegedly for the personal account of the appellee, but which the trial court found to have been disbursed by Fullerton for tax refunds to various home owners for excess payments they had made to appellee Hall, upon taxes against their homesteads and other properties.

The appellant in its brief thus states its view as to the gist of the controversy as a whole:

"There are therefore two main issues:

"(1) Was the County entitled to recover from J. W. Hall Ten Thousand Five Hundred Ten and 15/100 ($10,-510.15) Dollars in fees which he admitted he had collected in the course of the discharge of the duties of the office, but for which he claimed he was not liable to account to the county?

"(2) Did the defendant J. W. Hall sufficiently discharge the duty upon him to make a full accounting of the trust-funds in his possession as assessor and collector of taxes, that is, as a trustee of public funds?"

As already indicated, this court is unable to see eye to eye with that view, concluding rather, as did the trial court also, that the suit rested primarily upon R.S. Article 3891, as amended in 1935, Vernon's Ann.Civ.St. art. 3891, which thus declares the public policy of the State with reference to such fees of office as are here dealt with: "The compensation, limitations, and maximums herein fixed shall also apply to all fees and compensation whatsoever collected by said officers in their official capacity, whether accountable as fees of office under the present law, and any law, general or special, to the contrary is hereby expressly repealed. The only kind and character of compensation exempt from the provisions of this Act shall be rewards received by sheriffs for apprehension of criminals or fugitives from justice and for the recovery of stolen property, and monies received by County Judges and Justices of the Peace for performing marriage ceremonies, which sum shall not be accountable for and not required to be reported as fees of office."

That the Legislature was there dealing with fees and compensation collected by county officers in their official capacities only, and did not thereby intend to convert into a fee of office for which the county official was required to account as such every sort of compensation either he himself or any of his deputies might receive, regardless of the circumstances under and the specific purpose for which it was received.

That seems to be the view of the law declared in the Crosby County Cattle Co. v. McDermett case, Tex.Civ.App.,

281 S.W. 293, referred to supra, and when that principle is applied to the nature of the claims here involved, it becomes reasonably plain, as the trial court held, that no other portion than the mere tax statements—current and delinquent—of the items here involved did constitute fees and compensation collected by the appellee in his official capacity as assessor and collector of taxes for Harris County. It follows that he as such officer was under no duty to the appellant to account for such other collections, unless, perhaps, there were facts existing which properly gave rise to an estoppel against him to so claim; that matter was also, bindingly upon this court, found by the trial court to have no existence in the facts, and it cannot be said upon appeal that such a finding was without support in the testimony.

In the first place, it seems indisputable (that having been uncontrovertedly shown) that, in collecting the automobile license fees and—through his deputies—undertaking to render the various notarial services shown as incident thereto, the appellee was not acting at all in his capacity as assessor and collector of taxes for Harris County, but, instead, was acting as the designated agent of the State Highway Department, hence was performing a duty in that respect cast upon him by the Legislature in so naming him collecting agent for that arm of the State Government.

It seems inept, therefore, to say that the notary fees incident to the performance of that specially delegated collecting agency were paid to the appellee either by virtue of or in color of his office as tax collector of Harris County, whose sole function under Article 8, Section 14, of the present constitution, Vernon's Ann.St., would seem to have been to "perform all the duties with respect to assessing property for the purpose of taxation and of collecting taxes as may be prescribed by the Legislature."

In this connection, it has been held that automobile license fees are not taxes, but charges for the use by such vehicles of the public highways, collectible through the police powers of the state. Atkins v. State Highway Department, Tex.Civ.App., 201 S.W. 226; 27 Tex.Jur., Sec. 45, page 892; Revised Statutes, art. 6673; Vernon's Ann.Civ.St. arts. 6675a—2, 6675a—3, 6675a—12.

Moreover, this court, in Harris County v. Hall (this same appellee), Tex.Civ.App., 56 S.W.2d 943, writ dismissed, in construing these cited statutes and upholding their constitutional validity, further held that no part of such license fees as were here involved, when collected by the county tax collector, belonged to his county, but that they were all the property of the state itself.

It is, therefore, concluded that the appellee in this instance, in making the automobile license fee collections and issuing the necessary receipts therefor, was not acting in his official capacity as assessor and collector of taxes for Harris County, but was simply performing additional services as the designated agent of the State Highway Department, which in Texas is not an uncommon requirement of a public officer. 34 Tex.Jur., page 447, Sec. 70; Johnson v. Hanscom, 90 Tex. 321, 37 S.W. 601, 38 S.W. 761, dismissing error to Tex.Civ.App., 37 S.W. 453.

This structural conclusion, if sound, as it is thought to be, renders immaterial further consideration as to whether the notary fees declared upon in connection with the automobile transfers and licenses also inured to the benefit of the county.

As a corollary, it would further seem inferable at least that the deputies of the appellee in this instance were without authority of law to take and certify to the affidavits as to motor vehicles on which the notary fees here involved were charged and collected, as indicated by the Legislature's having passed in its 1941 session the Act known as House Bill No. 910, amending Vernon's Ann.Civ.St. Article 7246a, so as to specifically give the authority to take such automobile affidavits to the tax assessor and collector in the large cities of the state.

"The Currington case [Nueces County v. Currington, Tex.Com.App.], 162 S.W.2d, 687, sheds no light here. There the assessor and collector was held to have acted in an official capacity in the doing of an act, which she was authorized to do. The tax certificates were signed in the capacity of Mrs. Currington as Tax Collector of Nueces County, and upon each was impressed the seal of her office. The record at bar is wholly devoid of any suggestion that J. W. Hall, or any of his deputies, acted in an official capacity in collecting the notary fees. There is no suggestion that

any applicant was led to believe that he was doing anything other than paying a notary fee. The bills of sale were executed by a duly qualified notary at the time of filing. The other instruments bore no evidence that any deputy purported to act in an official capacity. Under the circumstances, the evidence supported the finding that the fees were notary fees and nothing more, and that they were not fees, or compensation, collected by the deputies in their official capacity."

The limitation by the trial court of appellant's recovery for tax statements made to those which it held should have been furnished free under R.S. Article 7324, Vernon's Ann.Civ.St. art. 7324, was, it is concluded, correct; because plainly these were (as admitted by him) for collections made by the appellee in his official capacity and by virtue of his office, whereas, as this court reads the holding in the McDermett case, there was no liability upon his part for the collections made for the other special tax information he furnished, hence this cause upon that feature was not brought within the Supreme Court's holding in Nueces County v. Currington, Tex. Com.App., 162 S.W.2d 687, also discussed supra.

■ In other words, there was a fact question in reference to those claims as to whether or not the information therein requested and furnished was of such a character as was required by law to be furnished free, and the trial court in that respect, by extended findings, determined that such facts did not exist. Wherefore, in that respect also, this court considers itelf as bound by that determination, since it cannot be said to have been without support in the evidence.

As concerns the $11,510.30 fund held under the name of Roy M. Fullerton in the First National Bank of Houston, which appellant in its quoted second "main issue", supra, terms a "trust fund", collected by Fullerton and disbursed for the account of the appellee, appellant's counsel admits that they made out no case on this count, if the trial court believed the testimony of Fullerton and appellee's other deputies concerning it. Not only did the auditor of the county testify that he had audited this refund account twice, and that on neither occasion had he found any evidence that appellee had appropriated any of the county's funds whatever, but it was further undisputedly shown that no taxpayer had ever raised any complaint about the handling of these funds; then the trial court itself, in rendering its judgment thereon, made in epitome this statement in support of its findings that no "trust fund" in favor of the county inhered in any of these items: "The Court's deliberate judgment with respect to the matters set out in the Trial Amendment is that the County and its representatives have exonerated J. W. Hall and every man that had anything to do with the matter of any just implication of irregularity or impropriety. * * * * This Court has been asked in the argument to pass upon the credibility of Fullerton, Randolph and all witnesses that have come from that office. I am prepared to say now that every bit of written evidence which we have has corroborated them until I don't have the slightest doubt that their story is true."

Fullerton, in final substance, simply testified that he had placed all excess payments made to Hall's office for taxes in a special account in his own name in the First National Bank of Houston, and that when the taxpayer came back with his tax receipt showing that he had overpaid on his taxes—which in most instances were payments on homesteads which had not been claimed at the time when made— he, Fullerton, would refund the excess by his own check on that First National Bank account; the trial court found, in effect, that every dollar of this $11,510.30 account had been handled in that simple way, the excess amount so returned by Fullerton through that bank being a mere matter of making change for the benefit of the taxpayer who had overpaid, which amounted to the same thing as if a taxpayer who owed $8 tax should personally hand the collector a $10 bill, and the collector should, on the spot, give him his tax receipt accordingly, along with $2 in change. Nothing else, in substance, can be made of the matter, it is thought, under the evidence and the trial court's amply supported findings thereon.

■ The further conclusion seems to this court inescapable that the trial court— on conclusive if not undisputed evidence— found all the facts necessary to support the appellee's pleas of 2 and 4 year limitation against the appellant's claims for these $11,501.30 of refund items. Vernon's Ann. Civ.St. arts. 5526, 5527. For some reason the court below did not state such a

finding, but it is determined that it should have. All these transactions occurred during the period from 1935 to 1937, both inclusive, whereas appellant's trial amendment, setting up its claim therefor, was not filed until January, 1942; neither were any facts alleged, or shown, legally tending to excuse such failure to act sooner. The recent holding in Bexar County v. Maverick, Tex.Civ.App., 159 S.W.2d 140, error refused, is cited as upholding this conclusion. The judgment will be affirmed.

Affirmed.