MODERN LIVING, INC., Appellant,

v.

August NIEDERHOFER, d/b/a
Niederhofer Mobile Home
Park, Appellee.

No. 09–87–006 CV.

Court of Appeals of Texas,
Beaumont.

May 5, 1988.

Rehearing Denied June 8, 1988.

David W. Biles, Denton, for appellant.

Ernest Coker, Jr., Coker, Durst & Wood, P.C., Conroe, for appellee.

## OPINION

BURGESS, Justice.

This involves a dispute between a mobile home seller and a mobile home park operator. Modern Living, Inc. (Modern) sold a mobile home to Gerald Wayne Antwine and Linda Antwine (Antwines). The Antwines financed the home through General Electric Credit Corporation (GECC) with Modern retaining a security interest in the mobile home. The Antwines moved the mobile home to a mobile home park owned and operated by August Niederhofer (Niederhofer). The Antwines fell upon difficult financial times and became delinquent in their monthly payments to both GECC and the Niederhofer Mobile Home Park. The Antwines then abandoned the mobile home in March 1983. Modern began trying to repossess the mobile home and finally in May 1983 picked up the mobile home. After regaining possession, Modern filed suit against Niederhofer for intentionally and knowingly interfering with Modern's superior right of possession as a secured party as well as for conversion of certain contents of the mobile home. After a bench trial, a take-nothing judgment was entered against Modern. The trial court filed the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. That Defendant never refused entry to Plaintiff to remove the mobile home in question from Niederhofer Mobile Home Park.

2. That Defendant rented the mobile home in question to Ronald Colson on behalf of, and with the permission of, Gerald Wayne Antwine and wife, Linda Antwine.

3. That subsequent to Ronald Colson moving into the home in question, Plaintiff expressly permitted Colson to remain in possession.

4. That there was no evidence at the time Defendant permitted Ronald Colson to move into the home that Plaintiff had foreclosed upon the mobile home or had divested Gerald Wayne Antwine and wife, Linda Antwine, from right of possession thereto.

5. That Ronald Colson was never a tenant of the Defendant at any time while he was in possession of the home in question.

6. That Defendant never took actual or constructive possession of the mobile home in question or withheld possession from Plaintiff.

7. That Defendant did not refuse to permit Plaintiff's mover from removing the mobile home on the trips that were made to Niederhofer Mobile Home Park.

8. That on at least one (1) occasion, the home was not removed because Ronald Colson requested that it not be removed since he was trying to buy the home and that Plaintiff authorized the home to remain on the premises on that occasion.

9. That Plaintiff was not forced to pay to Defendant any money in order to remove the home in question.

10. That Defendant did not remove or permit to be removed any items from the home or that any items were removed at a time when Defendant had any responsibility for the security of the home or items therein.

### CONCLUSIONS OF LAW

1. That Defendant did not permit a wrongful conversion of the mobile home in question or any items contained therein.

2. That Defendant did not commit a trespass to chattel involving the mobile home or any items contained therein.

Modern alleges four points of error, some with sub-points. We sustain those points of error which attack the findings that Niederhofer did not interfere with or withhold possession of the mobile home from Modern. This finding by the trial court is so against the overwhelming weight and preponderance of the evidence as to be clearly and manifestly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). It was undisputed that Niederhofer had, on a previous occasion, withheld a mobile home from Modern until the payment of $400 was received. In fact, Modern sent Niederhofer a letter in January 1983 which informed Niederhofer that Modern was not responsible for any lot rentals due on homes. Modern had, prior to this letter, paid Niederhofer $400 by check and had, thereafter, stopped payment on the check. Sometime after this, Modern had one of its employees hand deliver Niederhofer a legal memorandum which highlighted the case of *Mobile Home Brokers, Inc. v. Colvin*, 566 S.W.2d 68 (Tex.Civ.App.—Beaumont 1978, no writ). This memorandum explained the case, which held that a mobile home park owner committed conversion when he refused a secured creditor the possession of a mobile home without payments of past due rents and utility charges.

A representative of Modern later paid Niederhofer the $400, which they claimed was required to get the Antwine home released. There was also introduced into evidence, without objection, an invoice from the independent contractor who picked up the Antwine home. On this invoice was the notation, "Paid Niederhofer $500.00 cash for Modern Living, Inc. to pick up mobile home." Perhaps the most significant piece of evidence was written by Niederhofer himself. It stated:

NIEDERHOFER MOBILE HOME PARK

1308 North Second Street

Conroe, Texas 77301

April 15, 1983

Frederick R. Wilson
Modern Living, Inc.
14000 North Freeway—Hy. 75
Houston, Texas 77090
Dear Mr. Wilson:

I sincerely appreciate your taking care of your obligation to me in regards to the lot rent and check you stopped payment on.

I would appreciate it very much if you would move all mobile homes out of my park which you have sold and which the finance companies have recource [sic] on you. Otherwise, I would like to take this means of serving notice on you, that I am holding you responsible for any delinquite [sic] rent owed on my lots in the event the mobile home is repossessed and is picked up by you or anyone else. It will be needless for you to send anyone to pick up a mobile home out of my park without the rent being paid.

Sincerely,
/s/A. Niederhofer
August       Niederhofer, Owner
NIEDERHOFER       MOBILE HOME PARK

The last sentence of the letter is self-explanatory. Niederhofer contends there is no evidence he "forcibly" withheld possession of the Antwine trailer. A commercial business should not be expected to step to the line of forcible confrontation before they can claim intentional interference with

possession of chattels. Therefore, given the entire record, we hold that the trial court's findings concerning the withholding of the mobile home and interference with possession of the mobile home are against the great weight and preponderance of the evidence.

Modern also had a cause of action for conversion of certain items within the mobile home. We overruled these points of error concerning that particular cause of action. The case is reversed and remanded on the cause of action regarding the interference with possession and withholding of possession of the mobile home.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

BROOKSHIRE, Justice, dissenting.

This dissent is respectfully filed.

Basically, Modern Living, Inc., in its major thrust in Plaintiff's Original Petition, pleaded a conversion of one 14 × 16 Marshfield mobile home, serial number 601412031 AM. The Purchase Agreement described mobile home serial number 6014–12031AM as model Aquarius Manor, 56′ × 14′. Appellee stated that the first time he talked with the people at Modern Living was on or about March 25th, and that the Appellant had not come out to his place of business and made a realistic effort to remove the mobile home until April 15th, 1983. The mobile home had been sold originally to a Mr. Antwine. However, after Antwine left the home at the trailer park, a Mr. Colson, who was a third party to the transaction between the Appellant and Antwine, indicated that he, Colson, was attempting to buy the trailer home. On April the 15th, when the trailer home was moved, the Appellee unequivocally swore that he did not tell the Appellants or anyone else that the home could not be removed, either on that date or before.

There is also testimony to the effect that the Appellee had not been informed that Mr. and Mrs. Antwine were not keeping up the purchase money payments regularly on the trailer.

Again, the Appellant testified unequivocally upon cross-examination that he had never denied Modern Living the right to come and repossess the mobile home. The evidence is in conflict, but I would hold that the record is sufficient to support the trial

judge's findings of fact that the Defendant–Appellee Niederhofer never refused entry to the Plaintiff, Modern Living, to remove the mobile home in question. And further, the trial court's findings that Niederhofer never took actual or constructive possession of the mobile home in question, nor did he withhold possession of the same from Modern Living are supported by the evidence.

In a bench trial, the findings of fact are controlling on appeal where the relevant evidence is in conflict and where there is evidence to support the finding of fact. *Harris Cty. Flood Control Dist. v. Shell*, 591 S.W.2d 798 (Tex.1979). These findings of fact under this record are not properly to be disturbed on appeal. *Harris County v. Hall*, 141 Tex. 388, 172 S.W.2d 691 (1943).

In *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex.1971), the Supreme Court wrote that conversion is the wrongful dominion and control over another person's property in denial of the other person's right or inconsistent with the other party's rights. A necessary element of conversion is *an intent* on the part of the person alleged to have converted the property to assert right and control over the property. *Fox v. American Propane, Inc.*, 508 S.W. 2d 426 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.). This record, in my opinion, supports the conclusion of law that Niederhofer did not commit or permit a wrongful conversion of the mobile home, nor did he commit a trespass to the mobile home, or the articles contained therein.

I would construe the record as holding that there was sufficient evidence to sustain the conclusions of law in the bench trial below that Niederhofer did not commit a wrongful conversion of the mobile home or any items contained therein nor did he commit a trespass to chattels in the mobile home, or items contained therein.

Further, in my opinion, the record and Statement of Facts support the bench's findings that Niederhofer rented the mobile home in question and the lot whereon it was situated to Ronald Colson, but only on

behalf of and with the permission and consent of Gerald Wayne Antwine and wife, Linda Antwine. Niederhofer was acting in the nature of an agent for the Antwines.

Additionally, there is a lack of an element of conversion where one person acted with the permission of the owner or with the express or implied consent of the owner who deals with the property in the sense that he is to find another person to pay the rent. *See Terry v. Witherspoon*, 255 S.W. 471 (Tex.Civ.App. (1923) *aff'd*, Tex.Comm'n App. 267 S.W. 973 (1925)); *Castro Cooperative Gin Company v. Harrison*, 272 S.W. 2d 538 (Tex.Civ.App.—Eastland 1954, no writ).

The awarding of exemplary damages is basically within the sound discretion of the trial judge. There was no error in the trial judge's declining to award Modern Living punitive damages in this case.

The suggestion should be made, however, that there is another important practical issue in this appeal. On May 7, 1987, an opinion by this court in this proceeding was filed. The prior matter was an original proceeding styled *Modern Living, Inc., Relator, v. The Honorable Lee G. Allworth, Respondent.* 730 S.W.2d 444 (Tex. App.1987). There, basically, the Ninth Court of Appeals conditionally issued a Writ of Mandamus to compel the official court reporter to type up the complete Statement of Facts. The basis for this action was that Modern Living, Inc., had filed an Affidavit of Inability to give security for the cost in the trial court. The court reporter timely filed a contest but even though the trial court orally and solemnly pronounced that the contest was sustained, and even though there was a docket entry made to the same effect; nevertheless, there was no actual, written order that was drawn up and signed timely.

During the course of the original proceeding it was revealed that Modern Living, Inc., was in bankruptcy in Cause No. 84–04955–HL–5 which was styled: *In Re: Modern Living, Inc.,* in the Southern District of Texas, Houston, Division, of the United States District Court. It was further demonstrated that one Fred Wilson,

being the sole shareholder of Modern Living, Inc., was also in bankruptcy in Cause No. 84–04953–H3–5 styled: *In Re: Frederick Wilson and Ernestine Wilson,* in the Southern District of Texas, Houston Division, both being in the Bankruptcy Court.

Although the bankruptcy proceedings were in rem and although appropriate motions were made which applied for release of funds to pay the costs of the civil litigation and especially the cost and expenses of this litigation, the Bankruptcy Court according to counsel denied these Motions. It seems clear that the Bankruptcy Court which has exclusive jurisdiction of bankruptcy proceedings under the United States Constitution felt that it was the proper tribunal since there was a finding of fact in the original proceedings to decide these matters that Fred Wilson had been advised by his bankruptcy counsel, who was also his attorney of record in the State case, and also by the bankruptcy judge, that the expenditures of funds to pursue the civil litigation would likely result in contempt proceedings against Fred Wilson. Additional findings of fact were set out showing *inter alia* that Modern Living, Inc., had no income or cash flow and that Fred Wilson was a full time student and not then currently employed.

There was a further finding that Fred Wilson was supporting *himself and his family solely from the proceeds of student loans.* Modern Living, Inc. has taken the position at one point in the past that it was under the Federal Bankruptcy law in a reorganization proceeding under Chapter 11.

It has been announced to us that the bankruptcy judge of the Southern District of Texas, Houston Division, would not permit any funds of the bankruptcy estate, if any there were, to be used or expended in perfecting and bringing forward the record. However, it has not been shown whether in this alleged Chapter 11 proceeding a plan of reorganization has ever been proposed or approved or whether at this time there is a Trustee appointed for the debtor, or whether there have been any other affirmative orders of the bankruptcy

judge concerning this debtor in possession. Query: are the reports of the debtor in possession being made properly, timely and correctly to the Bankruptcy Court?

Further, I think the court's opinion ought to include instructions that under this record the only real element of damage, if any, raised was *the detention of the house trailer for a* limited period of several weeks rather than ordering a total remand of the entire cause of action for a complete retrial.

Section 362 of the United States Bankruptcy Law, 11 U.S.C. Sec. 362, entitled *Automatic Stay* generally provides for an automatic stay of any judicial, administrative or other action or proceeding against the debtor. However, that statute does not solve all the questions involving the duties, requirements and responsibilities of a debtor in bankruptcy, even a debtor in possession in reorganization under Chapter 11, either with or without a Trustee.

Since there is a basic concept that a bankruptcy proceeding is exclusively a Federal remedy and is a proceeding in rem, then consistent with that basic philosophy of the bankruptcy law, in my opinion it would be correct under the doctrine of comity between courts that the United States Bankruptcy Judge for the Southern District of Texas, Houston Division, be properly and currently advised of these proceedings in State court, both trial, appellate and mandamus.

Query: we do not know if a plan of reorganization has been proposed or approved, or disapproved; we do not know if a Trustee was appointed who may be a necessary party. I would opine that the State District Judge should be fully and currently advised on the bankruptcy proceeding. Since the court does not require such actions, I respectfully dissent.